NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JOSEPH WASH,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Civil Action No. 05-108(JWB)
(Criminal No. 03-505)

**O P I N I O N**

**APPEARANCES**:

    JOSEPH WASH, pro se
    Reg. No. 25306-050
    FCI Otisville
    P.O. Box 1000
    Otisville, New York  10963

    CHRISTOPHER J. CHRISTIE
    United States Attorney
    By:  Brian R. Howe
        Assistant United States Attorney
    Federal Building
    970 Broad Street
    Newark, New Jersey  07102
    (Attorney for Respondent)

**BISSELL**, Chief Judge

This matter comes before the Court on a motion filed by Petitioner Joseph Wash pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside or correct his sentence.  Petitioner sets forth the following grounds for this motion: (1) ineffective assistance of counsel, and (2) the sentence violates Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531 (2004).

**FACTS & PROCEDURAL HISTORY**

Officials of the Federal Bureau of Investigation ("FBI") received information in November 2002 that the Petitioner, Joseph Wash, was involved in substantial drug trafficking in the Irvington, New Jersey area.  See Presentence Investigation Report ("PSR"), ¶ 6.  The resulting investigation revealed that one of the persons with whom Petitioner worked distributing crack-cocaine was his cousin, Gary Smith.  Id.  It was later learned that the duo's source of supply was a woman known as "Moms[1]."  Id. ¶¶ 21-22.  Between November 21, 2002 and January 16, 2003, the FBI used a confidential informant to make numerous purchases totaling 222.3 grams of crack-cocaine, from Wash and Smith.  Id. ¶¶ 7-15.

On January 23, 2003, pursuant to issued warrants, Petitioner and Gary Smith were arrested.  Id. ¶ 16.  Upon Mr. Smith's arrest at his residence, FBI agents seized an additional 397.2 net grams of crack-cocaine, a Lorcin 380 semi-automatic pistol, one magazine loaded with seven rounds, and $1,018 in U.S. currency.  Id. ¶ 17.  Petitioner was arrested on the street in Irvington, New Jersey.  Thereafter, FBI agents traveled to his residence and, pursuant to a consent search, seized a Remington Rand .45 caliber semi-automatic handgun (with a defaced serial number),

---

[1] Due to later cooperation by Petitioner and Mr. Smith, "Moms" was identified as Jocelyn Diaz.  See PSR, ¶ 26.

seven rounds of ammunition and one empty 5.56 mm magazine.  Id. ¶ 18.  After admitting it was his, FBI agents also seized a 9 mm Jennings firearm from Petitioner's girlfriend Quadyrah Adam's, home.  Id. ¶ 19.  Ms. Adams stated to agents that because Petitioner paid her rent, on occasion, she allowed Petitioner to store and "cook up" cocaine in her apartment.  Id.  Subsequent to his arrest, Petitioner admitted to storing a Bushmaster semi-automatic rifle in a public storage unit.  Id. ¶ 20.  This rifle was also seized by law enforcement.  Id.  In a post-arrest statement, Petitioner admitted to having sold crack-cocaine for approximately three to four years.  Id. ¶ 22.  Petitioner also stated that every ten days, he purchased between 400 and 500 grams of cocaine from "Moms."  Id. ¶ 22.

On July 8, 2003, Petitioner entered a plea of guilty to the one-Count Information, Criminal Number 03-505.  The Information charged that from August 2002 through January 22, 2003, Petitioner

> did knowingly and intentionally conspire and
> agree with others to distribute and possess
> with intent to distribute more than 50 grams
> of a mixture or substance containing cocaine-
> base, specifically crack-cocaine, a Schedule
> II narcotic drug controlled substance,
> contrary to Title 21, United States Code,
> Section 841(a)(1).  In violation of Title 21,
> United States Code, Sections 846 and
> 841(b)(1)(A)(iii).

See Information, Attached to Government's Answer, Ex. A.
In a cooperating written plea agreement between the United States

and Petitioner dated February 26, 2003, the parties stipulated that, pursuant to the United States Sentencing Guidelines ("U.S.S.G."), the Base Offense Level applicable to Petitioner's violation was 36.  See Plea Agreement, Schedule A, Attached to Government's Answer, Ex. B.  Furthermore, the parties stipulated that as of that time, Petitioner "clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the offense charged."  Id.  Accordingly, if Petitioner were to clearly demonstrate acceptance of responsibility through the date of sentencing, a two-level acceptance of responsibility downward adjustment pursuant to U.S.S.G. § 3E1.1(a) was warranted.  Id.  In addition, because Petitioner intended to plead guilty, he was entitled to an additional one-level downward adjustment pursuant to U.S.S.G. § 3E1.1(b).  Id.  Finally, the parties stipulated to a conditional waiver of appeal which provided that Petitioner waived his right to file any appeal, any collateral attack, or any other writ or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255, which challenges the sentencing Court's determination or imposition of the offense level, if the total offense level determined by the Court is equal to or less than 33.  Id.  Conversely, the conditional waiver of appeal precluded the Government from appealing the sentencing Court's calculation of the offense level if that offense level was equal

to or greater than 36.  Id.

On January 6, 2004, this Court sentenced Petitioner to a term of imprisonment of 70 months.  See Judgment of Conviction, at 2, Attached to Government's Answer, Ex. C.  This sentence departed from the Sentencing Guidelines Total Offense Level of 35 due to the substantial assistance Petitioner provided to the Government.  Id. at 4.  The Court, relying on the PSR, found that a Base Offense Level of 36 applied.  Based on the firearms possessed by Petitioner in connection with the conspiracy, the Court found that a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) also applied.  The adjusted offense level of 38 was thereafter reduced three levels for Petitioner's acceptance of responsibility to a Total Offense Level of 35.  With a criminal history category of II, the corresponding sentencing guideline range was 188 to 235 months.  This Court, after hearing the arguments of defense counsel and the Government, granted the Government's motion pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553 and effected a ten-level downward departure in Petitioner's sentence, sentencing him at offense level 25.  The Petitioner did not file an appeal with the United States Court of Appeals for the Third Circuit.

On January 3, 2005, Petitioner filed a petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Petitioner raises two grounds for the § 2255 motion:  (1) he was

denied effective assistance of counsel because his counsel failed to object to a two-level sentence enhancement pursuant to U.S.S.G. § 2D1.1, and (2) by finding that the two-level enhancement applied, this Court "usurped the jury's function and violated [his] Sixth Amendment rights."  See Petition, at 3-6.

## DISCUSSION

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255; see also U.S. v. Rosendary, 152 F.Supp.2d 835, 838 (W.D.Pa. 2001). "Relief under this provision is generally available only in exceptional circumstances to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."  Rosendary, at 838 (quoting U.S. v. Gordon, 979 F.Supp. 337, 339 (E.D.Pa. 1997); Hill v. U.S., 368 U.S. 424, 428 (1962)) (internal quotations omitted).

Title 28 U.S.C. § 2255 generally "may not be employed to relitigate questions which were raised and considered on direct appeal."  U.S. v. DeRewal, 10 F.3d 100, 105 n.4 (3d Cir.

1993)(quoting Barton v. U.S., 791 F.2d 265, 267 (2d Cir. 1986)). Moreover, with regard to those claims which were never raised on direct appeal, the Supreme Court's decision in U.S. v. Frady, 456 U.S. 152 (1982), reaffirmed the "cause and actual prejudice standard" which was first enunciated in Davis v. U.S., 411 U.S. 233 (1973).  DeRewal, at 103.  Under this standard, "a convicted defendant must show both (1) 'cause' excusing his ... procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."  Id. (quoting Frady, at 168)).  It is well recognized, however, that a claim of ineffective assistance of counsel should be raised under Section 2255 rather than on direct appeal.  DeRewal, at 103-04.

As stated above, Petitioner agreed that in return for the Government's concessions in the plea agreement he would not appeal or collaterally attack the determination or imposition of his offense level if this Court sentenced him using an offense level of 33 or less.  This Court sentenced Petitioner consistent with an offense level of 25.  Petitioner nevertheless brought the instant challenge.  In United States v. Khattak, 273 F.3d 557, 563 (3d Cir. 2001), the Third Circuit held that "[w]aivers of appeals, if entered into knowingly and voluntarily, are valid, unless they work a miscarriage of justice."  The Third Circuit further noted that "waivers of appeals should be strictly construed."  Id.

-7-

In the case at bar, Petitioner does not now contend, nor has he ever argued, that his waiver of appeal was unknowing or involuntary.  Moreover, Petitioner has not and cannot articulate any "miscarriage of justice" which would result from the enforcement of the waiver of appeal as the Court's sentence was in full conformity with that waiver.  Accordingly, Petitioner is barred from filing the instant appeal.  Notwithstanding this bar (and for completeness), this Court will address the merits of Petitioner's appeal.

A.  *Applicability of Blakely v. Washington*

In Blakely, the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  542 U.S. 296, 124 S.Ct. 2531 (2004).  At the time of Petitioner's sentencing, United States v. Booker, 125 S.Ct. 738 (2005), had not been decided.  "Drawing upon its reasoning in Jones[2], Apprendi[3] and Blakely, the Booker majority held that mandatory enhancement of a sentence under the Guidelines, based on facts found by the court alone, violates the Sixth Amendment."  United States v. Davis, 407 F.3d 162, 163 (3d Cir. 2005).  To redress this infirmity, the Supreme Court excised the provision of the statute which made the

---

[2]  Jones v. United States, 526 U.S. 227 (1999).

[3]  Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).

-8-

application of the Sentencing Guidelines mandatory.

The Booker decision "brought about sweeping changes in the realm of federal sentencing." See Davis, 163. However, Booker is only applicable to cases on direct review and, therefore, does not apply to Petitioner's claims. Id.

*B. Petitioner's Ineffective Assistance of Counsel Claim*

The Sixth Amendment guarantees any defendant in a criminal case "the Assistance of Counsel for his defense", i.e., reasonably effective assistance of legal counsel. See U.S. CONST. amend. VI; Cuyler v. Sullivan, 446 U.S. 335, 344 (1980). In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-prong test that a petitioner must satisfy in order to obtain post-conviction relief due to ineffective assistance of counsel. First the petitioner must demonstrate that counsel's performance fell below an objective level of reasonable professional service, as measured by prevailing professional norms. See Strickland, 466 U.S. at 670. Second, he must show that absent counsel's deficient performance, the outcome of the trial would have been different. Id. There is a strong presumption that counsel's assistance falls within a range of what is considered reasonable. See Romero v. Lynaugh, 884 F.2d 871, 876 (5th Cir. 1989), cert. denied, 494 U.S. 1012 (1990). The deciding court must make every effort to eliminate the distorting effects of hindsight and to consider counsel's

-9-

assistance based on his perspective at that time.  See Strickland, 466 U.S. at 689.  A petitioner must affirmatively show how the actions of his attorney deprived him of a fair trial.  See Czere v. Butler, 833 F.2d 59, 63-64 (5th Cir. 1987).  He must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Strickland, 466 U.S. at 690.  The petitioner must show that counsel's errors made the trial fundamentally unfair.  See Lockhart v. Fretwell, 506 U.S. 364, 368-70 (1993).

In the Statement of Facts section of his Petition, Petitioner claims that he was "enhanced under 2D1.1 because a co-defendant (Gary Smith) was in possession of a firearm at the time of his arrest." Id. at 2.  Petitioner claims that he was denied effective assistance of counsel during the sentencing proceeding as his counsel "clearly failed to explore, contest, or conduct any meaningful inquiry into whether Petitioner's enhancement under [] § 2D1.1 had any nexus between the weapon and the drug crime committed by Mr. Wash." See Petition, at 4.  Petitioner argues that there was no evidence to justify this enhancement and "no discussion with petitioner regarding the facts underlying the enhancement [was] advanced in the presentence report." Id. at 5.

Petitioner's assertion that the two-level enhancement applied in this case was based solely on the firearm recovered from co-conspirator Gary Smith is inaccurate.  This Court imposed

-10-

the enhancement based on the findings in the Presentence Investigation Report, including, <u>inter</u> <u>alia</u>, the post-arrest actions and statements of Petitioner himself.  PSR ¶¶ 18-20.  At sentencing, Petitioner's counsel elected to focus on the effect of Petitioner's cooperation and his acceptance of responsibility.  That strategy was successful because it contributed to the Court's downward departure decision.  It cannot be said that "counsel's performance fell below an objective level of reasonable professional service, as measured by prevailing professional norms."  <u>See</u> <u>Strickland</u>, 466 U.S. at 670.

## CONCLUSION

For the reasons set forth above, the Grounds asserted by Petitioner in support of his motion for relief under 28 U.S.C. § 2255, whether considered individually, collectively or in any combination, fail to demonstrate that he is entitled to have his sentence or conviction set aside.  His motion is denied, in its entirety.

/s/   John W. Bissell
JOHN W. BISSELL
Chief Judge
United States District Court

DATED:  August 15, 2005